**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 08-cv-02508-WJM-MJW

THOMAS GEORGE AYOTTE,

  Plaintiff,

v.

JACKIE MCPEEK, (Individual and Official Capacity), Acting Medical Head Nurse and Manager,
R. MARTINEZ, (Individual and Official Capacity), Acting Physician's Assistant,
MR. LARRY HOFFMAN, (Individual and Official Capacity), Acting Case Manager,
MR. AL ESTEP, (Individual and Official Capacity), Acting Warden,
MR. JOHN GAHN, (Individual and Official Capacity), Acting Case Manager,
MR. MICKENS, (Individual and Official Capacity), Acting Vocational Teacher,
MR. SHEPHERD, (Individual and Official Capacity), Acting Cellhouse #7 Sergeant,
MS. CURRY, (Individual and Official Capacity), Acting Cellhouse #7 Corrections Officer,
MR. SHAMES, (Individual and Official Capacity), Acting Doctor/Provider,
MS. J. CROUNK, (Individual and Official Capacity), Acting Registered Nurse,
MS. J. ZADROGA, (Individual and Official Capacity), Acting Registered Nurse,
MS. ANNA COOPER, (Individual and Official Capacity), Acting Grievance Officer,
S. ROCCHIO, (Individual and Official Capacity), Acting Physician's Assistant,
MS. KATHLEEN BAXTER, (Individual and Official Capacity), Acting Legal Assistant,
MS. VIRGINIA SMITH, (Individual and Official Capacity), Acting Programs and ACA Compliance Officer,
MS. CATHIE HOLST, (Individual and Official Capacity), Acting Legal Assistant,
MS. YVETTE POPE, (Individual and Official Capacity), Acting Medical Supervisor,
MS. ROBIN BOLTON, (Individual and Official Capacity), Acting S.O.T.M.P. Therapist,
MR. ANTHONY A. DECESARO, (Individual and Official Capacity), Acting Step 3 Grievance Officer, and
MS. MARYANN ALDRICH, (Individual and Official Capacity), Acting Administrative Services Manager,

  Defendants.

---

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

---

THIS MATTER comes before the Court on Defendants' Motion for Summary

Judgment, ECF No. 80, filed on July 30, 2010 (the "Motion").  The Motion is fully briefed

and ripe for disposition.  For the reasons set forth below, the Motion is GRANTED.

## INTRODUCTION

This is a prisoner civil rights lawsuit.  Plaintiff Thomas Ayotte ("Ayotte") originally alleged that the Colorado Department of Corrections ("CDOC") and the individual defendants in their individual and official capacities violated Plaintiff's civil rights by not providing operational, bilateral hearing aids; and in intermittently providing a sign language interpreter for special programs, religious services, and medical visits. Plaintiff currently asserts claims for relief against the individual defendants in their individual and official capacities[1] under (1) the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.* ("Rehabilitation Act"); and (2) the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA").  Plaintiff also asserts claims for relief against the individual defendants in their individual capacities under (3) the Eighth Amendment to the U.S. Constitution; (4) the First Amendment to the U.S. Constitution; and (5) the Fourteenth Amendment to the U.S. Constitution.[2]

---

[1] The Court dismissed Defendant CDOC, James Abbot, Mr. Brandt, Pamela Ploughe, Rudolph Wencl, and Aristedes Zavaras in its June 17, 2011 Order on Order to Show Cause, ECF No. 113, pursuant to Plaintiff's Response to Order to Show Cause, ECF No. 111.  Additionally, Plaintiff has agreed to the dismissal of all claims against Warden Al Estep.  (ECF No. 88 at 18.)

[2] Pursuant to Plaintiff's Response to Defendants' Motion to Dismiss, the Fourteenth Amendment failure to train and/or supervise claim is no longer being pursued by Plaintiff.  (ECF No. 88 at 29.)  The Court therefore grants summary judgment as to this claim.  All remaining § 1983 claims are against the individual defendants only in their individual capacities, given the Court's prior dismissal of said claims against individual defendants in their official capacities. (ECF No. 38 at 2.)

## BACKGROUND

### A.    Factual Background

### *Montez Class Action*[3]

On May 5, 1992 Jessie Montez filed a *pro se* civil rights claim against the CDOC, which evolved into a class action suit alleging violations under the Rehabilitation Act, ADA, and 42 U.S.C. § 1983.  *Montez v. Romer*, 23 F. Supp. 2d 1235, 1237-38 (D. Colo. 1999).  The *Montez* plaintiffs were all state prisoners with disabilities, including "mobility impairments, diabetes, hearing impairments, and vision impairments."  *Id.* at 1237.

*Montez* was settled in 2003, and a Remedial Plan ("Plan") was established to provide procedures for claimants with hearing impairments, among others, to file individual claims for damages, with such claims to be resolved by a Special Master. (ECF No. 80 at ¶¶ 4, 6, 7, 13.)  However, "newly arrived DOC inmates or inmates who have become disabled since August 2003, must pursue *individual* claims for damages or other legal remedies under the ADA and Rehabilitation Act in separate actions, just as any other inmate who is not a member of the *Montez* class.  Those newly arrived or newly disabled inmates are, however, represented by class counsel for purposes of the enforcement and compliance of systemic and other equitable remedies that will inure to their benefit by virtue of the Plan and related Stipulations, and their filings related to enforcement or compliance issues should be considered by class counsel . . . ."  (Order re Report and Recommendation, Doc. 4381, ECF No. 80-3 at 3-4.)

---

[3] Defendants argue Plaintiff is a member of the *Montez* class and all claims relating to the *Montez* settlement should be pursued through the Special Master instead of as an individual action.  (ECF No. 80 at ¶ 17.)

The *Montez* class extends beyond those inmates at the CDOC at the time of the 2003 settlement to include new inmates and newly-disabled inmates whose claims under the Plan are filed before April 16, 2010.  (ECF No. 80-3 at 3, 5; ECF No. 80 at ¶ 15.)

### Incarceration at CDOC Facilities

On July 9, 2005, Plaintiff began serving a criminal sentence within the CDOC. (Baxter Aff., ECF No. 80-2 at ¶ 4.)  Since entering the CDOC through the Denver Reception and Diagnostic Center, Plaintiff has served his sentence first at the Fremont Correctional Facility and then at the Colorado Territorial Correctional Facility.  (*Id.* at ¶¶ 4, 7, 40.)

### Requests for Accommodation

On August 11, 2005, Plaintiff filed a request for accommodation, claiming he has been deaf since birth.  (*Id.* at 11.)  This request was received by the Office of Correctional Legal Services, and Dr. Tim Creany (Dr. "Creany") was asked to screen Plaintiff for a disability.  (*Id.* at ¶ 6, p. 12.)  On September 14, 2005, Dr. Creany determined that Plaintiff did have a hearing disability.  (*Id.* at 14.)  Upon further review, however, Chief Medical Officer Cary Shames (Dr. "Shames") determined that Plaintiff did not have a hearing disability, but did indicate that Plaintiff did need to use his hearing aids.  (*Id.* at 21; ¶¶ 16-18.)  Plaintiff filed a new request for accommodation seeking a hearing-disabled classification on April 13, 2006; this request was subsequently denied by Dr. Creany.  (*Id.* at ¶¶ 20-21, p. 22.)

Upon being transferred to the Colorado Territorial Correctional Facility, Plaintiff

4

filed another request for accommodation, seeking a flashing light in his cell, which was denied.  (*Id.* at 36, 38.)

### *Hearing Aids*

Plaintiff entered the CDOC system already using two working hearing aids.  (*Id.* at 50.)  His medical records indicate that his hearing impairment is improved with the use of bilateral hearing aids.  (*Id.* at ¶¶ 12, 18, 25, 26.)  After reporting a faulty hearing aid in 2005, Plaintiff received a new hearing aid on April 17, 2006.  (*see* Compl., ECF No. 3 at 14; ECF No. 80-2 at ¶ 26, pgs. 17, 25.)  Plaintiff was further informed through an accommodation resolution that if his hearing aid became inoperable, he had to immediately notify clinical services.  (ECF No. 80-2 at 26.)  On January 4, 2007, Plaintiff informed clinical services that his second hearing aid was in need of repair or replacement, but this request was denied because of the CDOC's policy to provide only a "single unilateral hearing aid."  (*Id.* at 27-28.)

### *Accommodations Provided*

Following a stipulation reached in *Montez* and because Plaintiff was an offender with a hearing impairment, Plaintiff was notified on June 19, 2008 that he would receive a vibrating watch.  (*Id.* at 48.)  Pursuant to new criteria, Plaintiff was determined to have a hearing disability according to an accommodation resolution issued on October 8, 2008.  (*Id.* at 51.)  As a result, Plaintiff was entitled to two hearing aids, a vibrating watch, assignment to a cell with a strobe alarm, a sign language interpreter during due process reviews and hearings, use of a TTY phone, among other accommodations. (*Id.*)  Plaintiff was also provided a sign language interpreter for programs he attended, including his sex offender classes and his Catholic Bible Studies.  (*Id.* at ¶ 57.)

5

The October 8, 2008 accommodation resolution indicated that a sign language interpreter may not be available for every program, and is not available on short notice. (*Id.* at 52.)  Since being awarded accommodation, Plaintiff has filed two Step 1 grievances because a sign language interpreter did not attend specific Catholic Bible Study or sex offender classes.  (*Id.* at 53, 56.)  CDOC responded to these grievances accordingly, explaining the circumstances surrounding the lack of an interpreter based on contracting situations with interpreters.  (*Id.* at 54-55, 57-58.)

**B.**     **Procedural Background**

Citing a history of sporadic accommodations resulting from his multiple requests for accommodation based on his hearing disability, Plaintiff filed a complaint on November 19, 2008, *pro se*, against the named individual defendants in their individual and official capacities.  (ECF No. 3.)  The Court granted Plaintiff leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  (ECF No. 5.)

Defendants filed a Motion to Dismiss on February 26, 2009, ECF No. 26, which was granted in part and denied in part, ECF No. 38.  Specifically, the Court dismissed Plaintiff's claims for damages against all individual Defendants in their official capacities, but found Plaintiff alleged sufficient facts to otherwise defeat a motion to dismiss.  (ECF No. 38 at 7.)

On October 29, 2009, counsel entered an appearance on behalf of Plaintiff. (ECF No. 51.)  A First Amended Complaint was filed thereafter, adding Defendants Aristedes Zavaras ("Zavaras"), Executive Director of the CDOC; James Abbot ("Abbot"), Acting Warden of Colorado Territorial Correctional Facility; and Pamela Ploughe ("Ploughe"), Acting Warden of Colorado Territorial Correctional Facility, in their

6

individual and official capacities, and the CDOC.  (ECF No. 70.)  Defendants filed the

Motion on August 30, 2010.  (ECF No. 80.)

In reviewing the briefing on the Motion, the Court was made aware that

Defendants Brandt and Wencl had not been served with the Summons and Complaint

in this action.  (ECF No. 80 at 1 n.1.)  Further, Defendants Zavaras, Abbot, Ploughe,

and the CDOC had also not been served with process following filing of the Amended

Complaint by virtue of which they were added as putative Defendants.  (*Id.*)  As a

consequence, the Court issued an Order to Show Cause to Plaintiff regarding this lack

of service of process, to which Plaintiff responded in writing that he did not object to the

dismissal of all claims against these putative defendants.  (ECF No. 109, 111.)

In addition, in Plaintiff's Response to the Motion ("Response"), Plaintiff conceded

Defendant Al Estep ("Estep") did not have the requisite personal participation in the

conduct challenged in this case such as to maintain a cause of action against him.

(ECF No. 88 at 18.)  In this same filing, Plaintiff further informed the Court that he was

no longer pursuing his claims for equitable or other injunctive relief, and agreed that

summary judgement in favor of Defendants on his Fourteenth Amendment failure to

train and/or supervise claim should enter.  (ECF No. 88 at 15, 29.)

The Court held oral argument on the Motion on June 17, 2011.  (ECF No. 114.)

At the hearing, the Court addressed unnamed putative defendants John Doe #1, John

Doe #2, John Doe #3, Jane Doe #1, Jane Doe #2, and Jane Doe #3.  (ECF No. 114.)

After receiving no objection from any of the parties, the Court dismissed the claims

against these putative defendants with prejudice.  (*Id.*)  The Court also addressed at the

same time the Order to Show Cause, and thereafter issued a written order dismissing

7

with prejudice Plaintiff's claims against Defendants Abbot, Brandt, Ploughe, Wencl, Zavaras, and the CDOC.  (ECF Nos. 113, 114.)[4]

Following oral argument, the Motion was taken under advisement and reserved for ruling.  (ECF No. 114.)  This Motion is currently before the Court.

## STANDARD OF REVIEW

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim or affirmative defense. *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002). In contrast, if the movant "does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotations omitted).

The non-moving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see* Fed. R. Civ. P. 56(e).  An issue

---

[4]  At hearing on the Motion, Plaintiff's counsel made an oral request to withdraw Plaintiff's stipulation for dismissal of his claims against the CDOC, which he had filed only the day before in response to this Court's Order to Show Cause, and to be permitted to finally attempt service on the CDOC. Plaintiff's oral motion was denied, given that he had made no showing in response to the Order to Show Cause of good cause as to why such service had not been effected in the 20 months since the filing of the Amended Complaint.

is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## DISCUSSION[5]

### A.      Withdrawn Claims

The Court first addresses claims withdrawn by Plaintiff in his Response.  Plaintiff has agreed to withdraw all claims against Defendant Al Estep because of a lack of personal participation.  (ECF No. 88 at 18.)  In this same filing, Plaintiff further informed the Court that entry of summary judgment in favor of Defendants on his Fourteenth Amendment claim that certain Defendants failed to train and/or supervise was appropriate.  (*Id.* at 29.)  Finally, Plaintiff is no longer pursuing his claims for equitable or other injunctive relief.  (*Id.* at 15.)

Therefore, all claims against Defendant Estep are hereby DISMISSED; summary judgment in favor of Defendants on Plaintiff's Fourteenth Amendment failure to train and/or supervise claim is hereby GRANTED, and all claims for equitable or other injunctive relief are hereby DISMISSED.

### B.      Rehabilitation Act and the ADA

The Rehabilitation Act provides, in pertinent part:

---

[5] Defendants argue that the statute of limitations limits Plaintiff's relief to injuries that happened on or after November 19, 2006.  (ECF No. 80 at 15.)  Because the Court is granting Defendant's Motion for Summary Judgment in its entirety on other grounds, the Court need not address Defendants' statue of limitations argument.

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."

29 U.S.C.A. § 794(a). "Program or activity" is defined as including all of the operations of "a department, agency, special purpose district, or other instrumentality of a State or of a local government" that receives federal funding. 29 U.S.C.A. § 794. The Rehabilitation Act served as the model for the ADA. *Montez*, 32 F. Supp. 2d at 1239 (citation omitted).

"Broader than the Rehabilitation Act, the ADA extends similar protections and prohibitions against discrimination to all state and local government services, programs, and activities, regardless of whether they receive federal financial assistance." *Id.* (citation omitted). The ADA provides, "no qualified individual with a disability, shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132. A public entity under the ADA includes "any State or local government; [and] any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C.A. § 12131.

### 1.    Individual Capacity Claims

As an initial matter, "individual defendants in their individual capacities are not properly subject to suit under the Rehabilitation Act" or the ADA. *Montez*, 32 F. Supp. 2d at 1241. Summary judgment in favor of Defendants as to Plaintiff's Rehabilitation Act and ADA claims against all remaining Defendants in their individual capacities is, as a consequence, GRANTED.

### 2.      Official Capacity Claims and the Eleventh Amendment

The Eleventh Amendment to the United States Constitution states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Courts have interpreted the Eleventh Amendment to forbid a federal court from assessing damages against a state.  *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994).  Likewise, damages cannot be assessed from state officials sued in their official capacities "because such suits are in essence suits against the state."  *Id.*

A state's Eleventh Amendment immunity is not absolute.  A state may waive its sovereign immunity from suit, or, under certain circumstances, Congress may abrogate a state's sovereign immunity under Section Five of the Fourteenth Amendment.  *Va. Office for Prot. and Advocacy v. Stewart*, --- U.S. ---, 131 S. Ct. 1632, 1638 (2011).

***ADA***

Title II of the ADA does not provide a waiver of the sovereign immunity Defendants in their official capacities enjoy under the Eleventh Amendment.  *Thompson v. Colorado*, 278 F.3d 1020, 1034 (10th Cir. 2001) (overruled on other grounds).  Likewise, suits against state officials in their official capacity are protected by the Eleventh Amendment's sovereign immunity as these suits are essentially suits against the state.  *Hunt*, 17 F.3d 1267.  Thus, to the extent Plaintiff is here suing Defendants in their official capacities for money damages under the ADA, this claim must be

11

dismissed on the basis of sovereign immunity.[6]  *See Starkey ex rel. A.B. v. Boulder Cnty. Soc. Servs.*, 569 F.3d 1244, 1260 (10th Cir. 2009).  Therefore, summary judgment in favor of Defendants on Plaintiff's ADA claim as to all remaining Defendants in their official capacities is GRANTED.

### Rehabilitation Act

States waive their Eleventh Amendment immunity under the Rehabilitation Act when they accept federal financial assistance.  *See Robinson v. Kansas*, 295 F.3d 1183, 1188-89 (10th Cir. 2002) (holding that immunity is waived by accepting federal funds under the Rehabilitation Act).  The Court therefore has jurisdiction to review Plaintiff's Rehabilitation Act claim against the remaining Defendants.

### Adequate Accommodations Under the Rehabilitation Act

To state a claim for relief under the Rehabilitation Act, Plaintiff must allege that "(1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007).[7]

Plaintiff has come forward with no evidence that he was discriminated against based on a disability.  The record shows that Plaintiff has a hearing impairment, and

---

[6] "The Eleventh Amendment does not generally bar actions for prospective injunctive relief where state officials have violated federal law." *Montez*, 32 F. Supp. 2d at 1241.  As previously noted, however, Plaintiff has withdrawn his claims for equitable and injunctive relief. (ECF No. 88 at 15.)

[7] "As a general matter, courts have construed the Rehabilitation Act and the ADA similarly." *Montez*, 32 F. Supp. 2d at 1239 (citation omitted).  Thus, cases interpreting the ADA and the Rehabilitation Act may be used interchangeably.

that as of October 8, 2008, the CDOC classified Plaintiff as having a hearing disability. (ECF No. 80-2 at 38, 51.)  However, the Court finds that Plaintiff's hearing impairment does not rise to the level of a disability under the Rehabilitation Act, and even if his impairment did rise to the level of a disability, he has been fully accommodated by various measures taken by the CDOC.

Plaintiff argues that during the time he was requesting disability status, he was denied the benefits of programs at CDOC, including Sex Offender Treatment and Monitoring Program ("SOTMP") sessions, Catholic Bible Study, and KAIROS because of a failure to understand and participate in these programs.  (ECF No. 88 at 28.) Specifically, Plaintiff requested a sign language interpreter at SOTMP classes and other facility trainings.  (ECF No. 80-2 at 37.)  Such requests were denied, however, based on medical records indicating that Plaintiff could hear and understand conversations and was not classified as hearing disabled.  (ECF No. 80-2 at 16, 24, 26, 33.)

In order for accommodations to be provided, an entity must be informed of an individual's disability and resulting need for accommodation.  *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171-72 (10th Cir. 1999).  When a disability is not obvious, an individual must inform the entity of his disability "lest a disabled [individual] keep his disability a secret and sue later for failure to accommodate."  *Robertson*, 500 F.3d at 1196 (modification in original) (citation omitted).

While Plaintiff argues he did not have meaningful access to programs such as

SOTMP classes, he provides little evidence supporting that argument.[8]  Defendant

Robin Bolton ("Bolton") worked for CDOC as a SOTMP therapist, and provided

treatment to Plaintiff.  (Bolton Aff., ECF No. 80-7 at ¶¶ 3-4.)  Despite Plaintiff's assertion

that he was not able to meaningfully participate in the SOTMP sessions, he gave Bolton

assurances on two occasions that he could hear with hearing aids and read lips.  (*Id.* at

¶¶ 6, 8.)  At no point did Plaintiff tell Bolton that he could not understand what she was

saying.  (*Id.*)  Based on his medical records, Bolton believed Plaintiff could effectively

participate in the sessions with the use of his hearing aids.  (ECF No. 80-7 at ¶ 5.)

When Plaintiff began SOTMP treatment in August 2008, there was no sign language

interpreter present.  However, by October 2008, Plaintiff was granted accommodation

and a sign language interpreter was provided.  (*Id.* at ¶ 10.)

Plaintiff also offers as proof of discrimination the fact that sign language

interpreters were not always present at his meetings.  Plaintiff cites the fact that on

October 2 and October 9, 2008, the sign language interpreter did not attend Plaintiff's

Catholic Bible Study sessions, and in March 2009, the interpreter did not attend three of

Plaintiff's SOTMP sessions.  (ECF No. 80-2 at 53; 56.)  However, the CDOC

appropriately explained that there was a new sign language interpreter on October 2,

2008 because the person newly assigned to that role had not passed a background

check and was therefore unable to enter the facility.  (*Id.* at 54.)  The October 9 absence

---

[8] Plaintiff filed an unsigned Affidavit of Thomas George Ayotte on October 1, 2010 as an attachment to Plaintiff's Response in Opposition to the Defendants' Motion for Summary Judgment, ECF No. 88.  Despite being granted leave to file a signed affidavit, ECF No. 90, Plaintiff did not submit said document within the allotted time.  On June 16, 2011, Plaintiff submitted a Motion to Allow Late Submission of Affidavit, ECF No. 110, which the Court granted during the June 17, 2011 hearing, ECF No. 114.

was due to a miscommunication by CDOC staff who sent the sign language interpreter to a KAIROS retreat in stead of the Catholic Bible Study.  (*Id.*)  By the time the error was noticed, the study group had finished.  (*Id.*)

In the case of the SOTMP sessions, Plaintiff had had a stroke which caused him to miss three SOTMP classes.  (ECF No. 88 at 11 ¶ 9.)  Because of this medical event, interpreters were cancelled until further notice.  (ECF No. 80-2 at ¶ 63.)  On the same day Plaintiff was cleared to participate in the classes, the Sign Language Network was contacted to resume service.  (*Id.* at ¶¶ 64-65.) However, as stated in the October 8, 2008 accommodation resolution, interpreters are not available on short notice.  (*Id.* at 52.)  Sign language interpreters resumed on March 10, 2009.  (*Id.* at ¶ 66.)  Thus, to the extent that on isolated occasions a sign language interpreter was not available for Plaintiff, Defendants have provided ample, non-discriminatory reasons for these sporadic lapses in the provision of interpreter services.  Plaintiff, in contrast, has come forward with no evidence that these proffered explanations are pretextual, or otherwise come forward with evidence that these isolated events occurred because of his alleged disability.

The Court finds that Defendants have provided Plaintiff with full accommodation of his hearing disability.  The Court further finds that prior to his October 8, 2008 accommodation resolution and disability classification, Plaintiff did not inform correctional facility staff such as Defendant Bolton of his inability to meaningfully participate in the SOTMP or other similar classes.  As a result, there is no evidence in the record that Plaintiff's exclusion from these programs was "because of" his disability, and the Court finds as much.

15

Summary judgment in favor of Defendants in their official capacity on Plaintiff's Rehabilitation Act claim is therefore GRANTED as to all remaining Defendants.

## C.    Eighth Amendment Claim

"A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eight Amendment's prohibition against cruel and unusual punishment." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). "The test for constitutional liability of prison officials involves both an objective and a subjective component." *Id.* (quotation omitted).

### *Objective Component*

First, a plaintiff must set forth "objective evidence that the deprivation at issue was in fact 'sufficiently serious.' " *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quotation omitted). "[A] delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Id.* (quotation omitted). Substantial harm may be found where there is a "lifelong handicap, permanent loss, or considerable pain." *Id.*

Plaintiff's evidence of record fails to show that a delay in providing Plaintiff with disability status and the corresponding accommodations – including bilateral hearing aids – resulted in any substantial harm. Plaintiff's medical records note an improvement in his ability to hear and understand conversations while wearing his hearing aids. (ECF No. 80-2 at ¶¶ 12, 18, 25, 26.) Further, Plaintiff provides no evidence showing a delay

in disability status and the resulting benefit of two hearing aids caused him substantial

harm in the form of permanent hearing loss, considerable pain, or otherwise.  In both his

Response, and again at oral argument on the Motion, Plaintiff wholly failed to point to

any credible evidence of any substantial harm allegedly suffered by Plaintiff as a result

of a purported unreasonable delay on the part of Defendants in accommodating his

hearing impairment.  Even the fact that Dr. Creany determined Plaintiff had a hearing

disability following his September 14, 2005 examination, ECF No. 80-2 at 14, but then

found no disability during an examination one year later, ECF No. 80-2 at 22, does not,

without more, constitute evidence of a sufficiently serious deprivation of Plaintiff's rights

so as to implicate liability for Defendants under the Eighth Amendment.  The Court finds

the objective component of an Eighth Amendment claim has not been met in this case

by Plaintiff.

### Subjective Component

The subjective component to the deliberate indifference test is met where the

plaintiff provides evidence showing an "official knows of and disregards an excessive

risk to inmate health or safety; the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and []he must

also draw the inference."  *Mata*, 427 F.3d at 751 (quoting *Farmer*, 511 U.S. at 837).

Deliberate indifference is not an express intent to harm, but rather "it is enough that [an]

official acted or failed to act *despite his knowledge of a substantial risk* of serious harm."

*Id.* (quotation omitted).  If a reasonable person would realize the risk, the Court may

infer that defendant also realized the risk.  *Id.*  Where plaintiff disagrees with medical

personnel, however, courts have found this does not rise to a constitutional violation.

17

*Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992); *Upp v. Shartrand*, 861 F.

Supp. 1022, 1023 (D. Kan. 1994).

Once again, Plaintiff has come forward with no evidence that a delay in receiving

two operational hearing aids, or any other accommodation requested as a result of his

hearing impairment, caused *any* Defendant to know but nonetheless disregard the fact

that Plaintiff was at risk of serious harm.  Plaintiff alleges that Dr. Creany's initial

determination of disability, coupled with a subsequent reversal of that determination, is

itself a violation of the Eighth Amendment.  (ECF No. 88 at 23.)  Plaintiff has failed,

however, to provide *any* evidence that he was at risk of serious harm because of the

differing determinations.

Plaintiff further alleges that Defendant Antionette Curry ("Curry") purposely spoke

to Plaintiff with her back turned, in an apparent attempt to thwart Plaintiff's attempt to

read her lips as she spoke to him.  (ECF 3 at 15.)  Curry denied ever acting in this

fashion.  (Curry Aff., ECF 80-5 at ¶ 4.)  More importantly, even if Curry had acted in the

manner Plaintiff alleges, Plaintiff has failed again to come forward with any evidence

that this conduct placed him at substantial risk of serious harm.

Plaintiff points to other conduct allegedly undertaken by one or more Defendants

which, he claims, rises to the level of a deprivation of his rights under the Eighth

Amendment.  These include: having his laundry mishandled; not hearing a command to

exit the showers at the proper time; and not comprehending the audio from the public

announcement system.  (ECF No. 3 at 15, 29.)  Even if true, none of this can fairly be

said to amount to evidence of Defendants having placed Plaintiff at substantial risk of

serious harm.  The Court therefore finds that the subjective component of Plaintiff's

Eighth Amendment claim has also not been met.  Summary judgment in favor of Defendants on Plaintiff's Eighth Amendment claim is therefore GRANTED as to all remaining Defendants in their individual capacity.

**D.      First Amendment Claim**

The Free Exercise Clause of the First Amendment "mandates that prison authorities afford prisoners reasonable opportunities to exercise their sincerely held religious beliefs." *Hammons v. Saffle*, 348 F.3d 1250, 1254 (10th Cir. 2003) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)).  "Reasonable" opportunities must be evaluated within the context of the prison setting.  *See Sayed v. Profitt*, 743 F. Supp. 2d 1217, 1223 (D. Colo. 2010).  "Prison regulations or practices that infringe upon prisoners' constitutional rights are valid as long as they are reasonably related to legitimate penological interests." *Id.*  Accordingly, "an inmate must show that the challenged action substantially burdened his sincerely-held religious beliefs."[9] *Id.* (citing *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir.2007)).  "To do so, the inmate must establish that (I) the beliefs at issue are religious and sincerely held and (ii) that the restriction imposes a substantial burden on them." *Id.*; *see also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316 (10th Cir. 2010).

---

[9] A reasonableness determination is based on "(1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights." *Kay*, 500 F.3d at 1219.  Because the Court does not find that Defendants placed a substantial burden on Plaintiff's exercise of his religious beliefs, the Court need not address whether restrictions were reasonably related to penological interests.

The Court does not question whether Plaintiff's religious beliefs are sincerely held.  In the Court's view, that Plaintiff regularly attends the Catholic Bible Study sessions is sufficient evidence of this fact for purposes of the instant Motion.

Plaintiff argues that Defendants' failure to grant his requests for maintenance and repair of his hearing aids, and requests for sign language interpreters at Catholic Bible Study and KAIROS programs, constitutes a substantial burden on Plaintiff's ability to practice his religious beliefs.  (*See* ECF Nos. 3 at 22; 88 at 24; 88-1 at ¶ 14.)  Plaintiff's medical records, however, indicate he was able to sufficiently communicate and understand conversations with the use of only one operational hearing aid.  (ECF No. 80-2 at ¶¶ 12, 18, 25, 26.)  As noted above, Plaintiff's disagreement with a medical assessment does not give rise to a constitutional violation.  *Ledoux*, 961 F.2d at 1537.

During Plaintiff's incarceration within the CDOC, he regularly attended the Catholic Bible Study and KAIROS programs.  (*See* Letter to Attorney, ECF No. 87 at 2.) Although Plaintiff claims that he has not been able to fully understand all of the lessons at these programs because of his hearing impediment, ECF No. 88-1 at ¶ 16, Plaintiff provides no evidence that he was unable to practice his religious beliefs because of the denials, or that Defendants had placed a substantial burden on his ability to do so. *Calbone*, 600 F.3d at 1316.

Further, following the CDOC's October 8, 2008 determination that Plaintiff is disabled, Plaintiff complains that there were dates that a sign language interpreter was not provided at the Catholic Bible Study sessions, even though he was to receive such accommodation.  (ECF No. 80-2 at 53.) In both his Response and at oral argument on the Motion, however, Plaintiff could only point to two instances in all the years of

incarceration at issue here, at which a sign language interpreter failed to attend the bible study classes.  (*Id.*)  Plaintiff has been unable to point to any evidence to rebut the resulting inference that since Plaintiff's disability determination, Defendants have provided sign language interpreters to each and every other Catholic Bible Study class Plaintiff attended.  Defendants' failure to provide a sign language interpreter on two occasions is, at best for Plaintiff, a *de minimus* lapse in the provision of accommodation services.  Especially given Defendants' reasonable explanation for what occurred at these two meetings, the conduct of which Plaintiffs complains does not constitute a substantial interference with Plaintiff's right to exercise his religious beliefs, and thus does not rise to the level of a constitutional violation.  *See Gallagher v. Shelon*, 587 F.3d 1063, 1070 (10th Cir. 2009) ("[A]n isolated act of negligence does not support a claim that [Plaintiff] was denied his First Amendment right to free exercise of religion.").

The Court finds Plaintiff's exercise of his religious beliefs was not substantially burdened by Defendants' delay in maintaining his hearing aids and in not providing sign language interpreters at two religious classes attended by Plaintiff.  Summary judgment in favor of Defendants on Plaintiff's First Amendment claim is therefore GRANTED as to all remaining Defendants in their individual capacity.

## CONCLUSION

It is therefore ORDERED that Defendants' Motion for Summary Judgment, ECF No. 80, is hereby GRANTED as follows:

(1)     Summary Judgment as to Plaintiff's Rehabilitation Act claim against all remaining Defendants is GRANTED;

(2)     Summary Judgment as to Plaintiff's Americans with Disabilities Act claim

against all remaining Defendants is GRANTED;

(3)     Summary Judgment as to Plaintiff's Eighth Amendment claim against all

remaining Defendants is GRANTED;

(4)     Summary Judgment as to Plaintiff's First Amendment claim against all

remaining Defendants is GRANTED; and

(5)     Summary Judgment as to Plaintiff's Fourteenth Amendment failure to train

and/or supervise claim is GRANTED.

It is FURTHER ORDERED that given Plaintiff's stipulation to the withdrawal of

said claims:

(1)     Plaintiff's claims for equitable or other injunctive relief are DISMISSED

without prejudice; and

(2)     Plaintiff's claims against Defendant Estep are DISMISSED without

prejudice.

All current Court settings are hereby VACATED.  The Clerk shall enter FINAL

JUDGMENT in favor of Defendants consistent with this Order.

Dated this 24th day of June, 2011.

BY THE COURT:

_____

William J. Martinez
United States District Judge

22